† HAYNES *versus* ROWE, & al.

In an application for insurance, the words, " for the benefit of captain and owners," and in a policy, " on account of whom it may concern," do not necessarily secure insurance, in case of loss, to one having an interest in the property insured.

The right of one to recover upon a policy must depend upon his interest acquired as a party to the *contract.*

Where the owner of a vessel and the master who sails her on shares, direct the same person to procure an insurance on freight, without designating the portions to each, it may well be presumed, where their interests are equal, that they are alike interested in the policy.

And where the owner became bound for the master for supplies of the vessel, and by consent of the master, his security was to be by insurance on the freight, such owner is entitled to indemnity from the insurance, although no assignment of the policy was ever made by the master.

If a witness be disqualified, by reason of interest, at the time of giving his deposition, and at the time of trial that disqualification is removed by statute, the deposition is admissible.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding. ASSUMPSIT, for money had and received.

The defendants had in their hands $415,89 being the amount of the insurance on the freight of schooner Statira, less the premium and commissions of the merchant procuring it, for the legal owners.

The plaintiff owned the schooner, and Isaiah Loud was master, sailing her on shares. One J. Richards shipped a cargo of spars, at Frankfort, to be carried to Philadelphia, and there delivered to E. A. Louder & Co., under an agreement with the master to pay $450 freight.

It was in evidence by one Cram, that when about sailing, the master wanted some provisions which the merchant declined to furnish on his credit. The plaintiff being present, agreed to pay for them, and he proposed to Loud to be secured on the freight, to which he assented. Richards was present, and said he was about writing to get insurance on the cargo, and asked plaintiff if he should write to have the freight insured, to which he agreed. All interested were present.

Richards wrote thus: — "E. A. Louder & Co: I wish you to get insurance $500 on cargo, and $450 on freight, for the benefit of captain and owners. You will settle the expense with Captain Loud when you pay freight, &c."

Louder & Co. thereupon effected insurance thereon, upon an open policy, a part of which was as follows: — "Philadelphia Insurance Company insures $950, on cargo and freight as below, per schooner Statira, whereof ———— is master, at and from Frankfort, Maine, to Philadelphia, say, on —

  "Cargo under deck, . . . $225,
  "On do. on do. . . . 275,
  "And on freight under deck, . . 450, valued

at the sum insured; for and on account of whom it may concern; loss, if any, payable to E. A. Lowder & Co."

The $450 on the freight, was, after the loss, paid by the insurers to Louder & Co.

The schooner having been condemned, and with the cargo sold at auction at St. Thomas, by the captain, without remitting any portion of it to Richards, he commenced a suit against plaintiff, and attached the freight money in the hands of Louder & Co. The captain also claimed the whole amount, and it was finally paid to defendants to hold for the right owners.

In June, 1853, the master, under oath, deposed as follows: — "that in Dec. 1851, I requested Joseph Richards, who had shipped a cargo of spars on board the schooner Statira, to procure an insurance of $450 upon the freight, expressly for my own benefit, the premium to be paid by me, and being then master of the vessel, and running her on shares." This was objected to on the ground of interest.

The cause was submitted to the decision of the full Court, with jury powers, to render judgment by nonsuit or default.

*Rowe & Bartlett, pro sese.*

Neither the policy nor the letter of Richards furnish any

light for whose benefit the insurance was effected.   Phil. on Ins. 152.

We must look beyond the policy and letter.   Loud testifies that the insurance was made at his request, for his benefit, and at his cost.   His testimony is admissible under the Act of March 17, 1855.

If that testimony is believed, it is conclusive.   But without that, Richard's letter that Loud was to pay the premium, settles that the insurance was for his benefit.

The plaintiff never authorized or ratified any insurance for freight.   He never paid, or became liable to pay, or intended to pay any premium.   He could not have maintained an action against the insurance company.   *Foster & als.* v. *U. S. Ins. Co.*, 11 Pick. 85; *Catlett* v. *Pacific Ins. Co.*, 4 Wend. 75.

If it is said the insurance was to secure plaintiff against a liability he had assumed for Loud, then that can only apply to Loud's half.   There was no assignment from Loud to plaintiff.   If Cram's statement be true, which is incredible, it is entirely insufficient to prove a contract between plaintiff and insurers, or an assignment of Loud's policy subsequently procured.

*A. Sanborn,* for plaintiffs.

Tenney, J. — The plaintiff seeks to obtain a judgment against the defendants for the sum of $415,89, and accruing interest thereon, on account of that amount in their hands, received from underwriters upon a policy of insurance for freight of the schooner Statira, dated January 10, 1852.

The plaintiff was the owner of the schooner at the date of the policy, and Isaiah Loud was the master of the same, running her on shares.   And insurance was effected to the amount of $450.   The plaintiff claims to be entitled to receive the amount in the hands of the defendants, on the ground that he procured the insurance; this right the defendants deny, insisting, that the insurance was procured, wholly by the master, and for his benefit.

The master of a vessel, merely as such, has no right to procure insurance for the owners, and such insurance would not be effectual against the underwriters, unless the act of the master, therein, should be ratified. *Foster* v. *United States Ins. Co.* 11 Pick. 85.

The language in the policy, " on account of whom it may concern," or that in the letter of Richards to Lowder & Co., of Dec. 11, 1851, wherein he wishes the latter to procure insurance of $500, on the cargo, and $450 on freight, " for the benefit of the captain and owners," does not necessarily secure any benefit to Richards, the captain, or the owners of the schooner. The person who has an interest in the property insured, cannot for that reason alone, be entitled to the amount covered by the policy in case of a loss. The right to recover, in such event, must depend upon the interest acquired, as a party to the contract.

The question in this case is, was the plaintiff a principal, in whose behalf, or on whose account the insurance was obtained ? In answering this question, it is proper to take into consideration several facts, which do not appear to be in controversy; one is the relation, existing between the plaintiff as owner of the schooner, and Loud as the master, and running her upon shares, which is understood to be " share and share alike." Another fact, which may be material, in ascertaining the great question of fact involved is, that Joseph Richards, who had shipped the cargo on board the Statira, was the agent through whom the insurance was effected. The plaintiff relies upon the evidence of Cram, and the letter of Richards to Louder & Co., that it was so ; and the defendants rely upon the affidavit of the master, which states, that in December, 1851, he requested Richards to procure an insurance of $450, on the freight.

After the cargo of spars was shipped on board the schooner by Richards, under an agreement with the master to pay $450 for freight, the plaintiff purchased of Hugh Ross, provisions for the master to be used on board the vessel, to an amount of some over $100, and as security for

this liability to the plaintiff, the latter proposed afterwards to the master, that he should procure insurance upon the freight, to which the master assented.  At the same time, Richards, being present with the plaintiff and the master of the vessel, said he was about writing to procure insurance on the cargo, and was authorized by the plaintiff to cause insurance on the freight.  And on Dec. 11, 1851, Richards wrote to Louder & Co., announcing the shipment of the spars, saying, " I wish you to get insured $500, on cargo, and $450, on freight, for the benefit of captain and owners; you will settle the expense with Captain Loud when you pay freight," &c.  The case finds, that thereupon Louder & Co. effected an insurance upon the cargo and the freight, for account of whom it may concern.

The affidavit of the master is in the case, subject to objection.  He was so situated in his relations to the fund in the hands of the defendants, that a question could have arisen, at the time, he made his affidavit, whether he was a competent witness.  But by the statute of 1855, he was competent, whether he were so before or not.  The interest when he made the oath to the affidavit was no greater, than it would have been, if he had been called to testify in the trial, which was after the passage of the statute referred to, and his affidavit was admissible.

The master's statement is, that the insurance which he procured through Richards, was expressly for his benefit, the premium was to be paid by him, he being the master at that time and running the vessel on shares.

The affidavit and other facts in the case, may appear somewhat inconsistent, but it is believed, that one may be reconciled with the other.  It is abundantly shown, that the authority given to Richards, to procure insurance on the freight, was at one time, when the owner and master were with him.  Upon the receipt of his letter to Louder & Co., they obtained the insurance.  The proposition of the plaintiff to obtain insurance on the freight, assented to, by the master, as the security of a sum, but little exceeding one hundred

dollars, would have been carried into effect by an insurance of the amount of indebtedness of the master to the owner. It does not appear, that this arrangement was abandoned; but on the suggestion of Richards, that the plaintiff might desire insurance on a greater amount as freight, he was authorized to obtain it on the sum of $450. This must be understood as carrying out the designs expressed by both master and owner.

If the freight had been earned, one half would have belonged to the owner, and the other to the master. If, therefore, the premium had been paid from the freight, which would have been due from Richards, it would have been from the joint fund, to be adjusted according to the amount insured for each. The master might well understand, that the premium of insurance was to be paid by him, as it was to be done from the freight, which it was expected would be in the hands of Louder & Co., as Richards' consignees. This is not deemed material in deciding the question, on whose account the insurance was obtained.

It not having been arranged, what amount of freight should be the subject of insurance to be procured by the master, and the amount to be covered by the insurance obtained by the direction of the plaintiff, it may well be presumed, from the equal interest therein, and the agency of Richards for both, that the policy was as much for the benefit of one as the other. This would entitle the plaintiff to one half the fund, as the assured therefor.

It is quite evident, that the master assented to obtain insurance on the freight for the purpose of securing the plaintiff for the provisions purchased of Ross, and that he intended to do so in good faith. And the arrangement for obtaining insurance on the freight generally, having been made at the time that the contract with Ross was consummated, and the master agreed to obtain insurance for the security of his liability to Ross for the master, nothing further was necessary, than is disclosed in this case, to vest an interest in the fund in the plaintiff, on account of that liability. It

was therefore made upon consideration, and there was a contract between the owner and the master, which would bind the latter, notwithstanding it does not appear, that any assignment of the master's interest in the policy was made to the plaintiff. *Defendants defaulted, — and judgment for plaintiff for one half of the fund in question, and for the amount of his indebtedness to Ross for the master, in addition.*